UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| KIMBERLY GAIL LUDWIG, | ) | No. 13 B 32960 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| NANCY SCHAUL, as Administrator for the Estate of Gary Crawford, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 A 1345 |
| | ) | |
| KIMBERLY GAIL LUDWIG, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Gary Crawford and his wife, Kimberly Gail Ludwig, owned a house as joint tenants. When they divorced, they agreed that the house would stay in joint tenancy, but Crawford could sell it and keep most of the sale proceeds. Crawford died without ever selling the house. After he died, Ludwig sold it herself, and Nancy Schaul, as administrator of Crawford's probate estate, sought the proceeds from Ludwig in state court. Ludwig then filed a chapter 7 bankruptcy case. Schaul responded with an adversary proceeding in which she alleges that Ludwig owes the probate estate a debt nondischargeable under section 523(a) of the Bankruptcy Code.

Before the court for ruling is Ludwig's motion under Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion will be granted.

## 1. Jurisdiction

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## 2. Facts

On a Rule 12(b)(6) motion to dismiss, all well-pleaded factual allegations in the complaint are taken as true, and all reasonable inferences from the facts are drawn in favor of the non-movant. *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013). Facts evident from exhibits attached to the complaint are also considered. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *see* Fed. R. Civ. P. 10(c) (made applicable by Fed. R. Bankr. P. 7010). If the complaint's allegations and the exhibits conflict, the exhibits trump the allegations. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

The complaint and exhibits here disclose the following facts. Gary Crawford and Kimberly Gail Ludwig married in 1973. They owned residential property in Highland Park, Illinois, that they held in joint tenancy.

In 1980, Crawford and Ludwig divorced. The judgment in their divorce case included a stipulation and property settlement agreement (the "PSA"). The PSA provided that the Highland Park property would "remain in joint tenancy between the parties." Crawford, however, was given the right to exclusive occupancy, sole responsibility for payment of the mortgage and any other indebtedness, and the right to contract for the sale of the property. In the event of a sale "by the husband," the PSA entitled Ludwig to "the first $10,000 of proceeds" and said that this "equity entitlement" would "stand as a lien" on the property. The balance of the sale proceeds

after the $10,000 would belong to Crawford.

Crawford never sold the Highland Park property. At some point before March 12, 2012 (the precise date is not alleged), he died, and Schaul was appointed administrator of his estate. Crawford had a disabled son who is his sole heir.

On March 12, 2012, after Crawford's death, Ludwig sold the Highland Park property to DRH Cambridge Homes, Inc., for $257,000, giving DRH a warranty deed. According to Schaul, Ludwig set the price below the property's fair market value to facilitate a quick sale. Ludwig kept all of the proceeds from the sale and either used them herself or transferred them to others.

In July 2013, an Illinois state court hearing Crawford's probate case entered an order requiring Ludwig to account for all of the sale proceeds and pay them to Schaul as administrator no later than August 19, 2013. That same day, Ludwig filed a chapter 7 bankruptcy case.

Schaul then commenced an adversary proceeding against Ludwig seeking to have Ludwig's debt in connection with the Highland Park property declared nondischargeable. The complaint has three counts. Count I alleges that the debt is one for money obtained by false representation, false pretenses, or actual fraud and is nondischargeable under section 523(a)(2)(A) of the Code, 11 U.S.C. § 523(a)(2)(A). Count II alleges that the debt is the result of fraud or defalcation while acting in a fiduciary capacity and is nondischargeable under section 523(a)(4), 11 U.S.C. § 523(a)(4). Count III alleges that the debt is the result of a willful and malicious injury and is nondischargeable under section 523(a)(6), 11 U.S.C. § 523(a)(6).

Ludwig has moved to dismiss all three counts of the complaint under Rule 12(b)(6) on the ground that they fail to state a claim.

### 3. Discussion

Ludwig's motion will be granted. As she correctly argues, none of the counts states a claim to have the debt alleged declared nondischargeable under section 523(a). The complaint will therefore be dismissed. Schaul will be given an opportunity to amend.

### a. Rule 12(b)(6) Standards

Under Rule 12(b)(6), a complaint will be dismissed unless it clears two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must contain enough factual detail to give the defendant "fair notice" of the claim. *Reger Dev. LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Second, the complaint must state a plausible claim, meaning the allegations must raise the plaintiff's right to relief above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013).

Even if the complaint gives fair notice and the facts are plausible, a complaint will be dismissed when the facts alleged state no claim as a matter of law. Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). If "as a matter of law it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Id.* at 327 (internal quotation and citation omitted); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *Quinones ex rel. Quinones v. Ariezaga*, No. 07-CV-0004, 2008 WL 907442, at *3 (N.D. Ill. Mar. 31, 2008).

### b. Count I – Section 523(a)(2)(A)

Count I fails to state a claim under section 523(a)(2)(A) as a matter of law. The facts alleged describe no fraud of any kind.

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Although some courts have applied a single test for determining nondischargeability under section 523(a)(2)(A), that section describes three separate grounds for holding a debt nondischargeable: false pretenses, false representation, and actual fraud. *First Am. Title Ins. Co. v. Speisman (In re Speisman)*, 495 B.R. 398, 402 (Bankr. N.D. Ill. 2013); *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010).

All three grounds in section 523(a)(2)(A), however, share a basic requirement: some form of fraud. *See First Bankers Trust Co., N.A. v. Dade (In re Dade)*, Nos. 11-71024, 11-7090, 2012 WL 1556510, at *8 (Bankr. C.D. Ill. May 1, 2012) (noting that a section 523(a)(2)(A) will be successful only with "proof of a debtor's fraudulent conduct"). A simple breach of contract, one involving no element of deceit, does not produce a debt nondischargeable under section 523(a)(2)(A). *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553-54 (7th Cir. 2011); *Berger Schatz, LLP v. Livermore (In re Livermore)*, Nos. 12 B 30720, 12 A 1689, 2013 WL 1316549, at *4 (Bankr. N.D. Ill. Apr. 13, 2013); *Condon Oil Co. v. Wood (In re Wood)*, 503 B.R. 705, 710 (Bankr. W.D. Wis. 2013).

In her complaint, Schaul alleges at most that Ludwig breached a contract. In the 1980 divorce proceedings, the complaint says, Ludwig entered into an agreement, the PSA, under

which she agreed that Crawford would receive all but $10,000 of the proceeds from a sale of the Highland Park property. The right to receive those proceeds became the right of Crawford's probate estate on his death. *Sondin v. Bernstein*, 126 Ill. App. 3d 703, 708-09, 467 N.E.2d 926, 931 (1st Dist. 1984) (holding that rights under a property settlement agreement in which divorcing spouses agreed to divide proceeds from sale of property in joint tenancy survived the death of one spouse). After his death, Ludwig sold the house and kept all of the proceeds for herself. But even if keeping the proceeds was a breach of Ludwig's obligations under the PSA, she did not commit any sort of fraud in keeping them. There was nothing deceitful – no "false suggestions" or "suppression of truth," *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) – in what she did. The complaint alleges nothing.

Schaul argues that Ludwig's fraud consisted of her misrepresentation to DRH, the buyer, that she had the right to sell the property. That misrepresentation, Schaul suggests, was made in the warranty deed Ludwig gave DRH and was one on which DRH relied.

Schaul is mistaken. To be sure, the warranty deed represented that Ludwig had the right to sell the property. *See* 765 ILCS 5/9 (2012) (stating that a warranty deed represents that the grantor is "the lawful owner of an indefeasible estate in fee simple" and has "good right and full power to convey the same"). But that representation was true. Before their divorce, Crawford and Ludwig owned the property as joint tenants. After the divorce, the PSA declared that the property would "remain in joint tenancy between the parties." A basic feature of a joint tenancy "is the right of survivorship, which is the right of the last survivor to take the whole of the estate." *Harms v. Sprague*, 105 Ill. 2d 215, 224, 473 N.E.2d 930, 934 (1984). When one joint tenant dies, title also "vests automatically" in the other; the property "does not become part of the

probate estate." *In re Estate of Martinek*, 140 Ill. App. 3d 621, 628-29, 488 N.E.2d 1332, 1337 (2d Dist. 1986). Although Crawford had the right to sell the property during his life, when he died his interest in the property went to Ludwig, not to the probate estate. The property then became hers to sell.[1] In executing the warranty deed, she made no misrepresentation.

Because the complaint alleges no fraud on Ludwig's part (since the PSA and warranty deed attached as exhibits to the complaint trump the allegation that the property "was not lawfully [Ludwig's] to sell"), Count I states no claim under section 523(a)(2)(A). Count I will be dismissed.

### c. Count II – Section 523(a)(4)(A)

Count II, the section 523(a)(4) claim, will also be dismissed. Count II alleges no fiduciary relationship between Ludwig and Crawford and so states no claim under that section. Count II also alleges no claim under section 523(a)(4) based on embezzlement or larceny.

Section 523(a)(4) of the Code excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). On its face, Count II of Schaul's complaint attempts to allege only a claim based on Ludwig's

---

[1] For this reason, Ludwig's sale of the Highland Park property also was not a breach of the PSA. The PSA granted Crawford the right to sell the property "whenever he shall so desire." But the property remained unsold at his death; on his death, Ludwig – as the sole surviving joint tenant – became the owner of the property. At that point, Ludwig alone had the power to sell the property after Crawford died. If she could not sell it, no one could.

Schaul wrongly claims there was something unfair or unjust about this. Ludwig's right to sell the property resulted simply from the way Crawford and Ludwig decided to order their affairs in 1980 when they divorced. Had Crawford wanted to prevent Ludwig from having the ability to sell the property after his death, he could have reached a different agreement, or he could have sold the property himself while he was alive. He did neither. What happened next followed from the PSA's terms and Illinois law. *See Estate of Croteau v. Croteau*, 143 N.H. 177, 180-81, 722 A.2d 464, 466 (1998) (making this same observation in a nearly identical case).

defalcation while acting in a fiduciary capacity. To state that claim, Schaul had to plead facts sufficient to raise a plausible inference "(1) that the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) that the debt was caused by fraud or defalcation." *See Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765-66 (7th Cir. 2011); *In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000).

Whether a debtor is a fiduciary for purposes of section 523(a)(4) is a question of federal law. *Berman*, 629 F.3d at 767; *Frain*, 230 F.3d at 1017. The exception to discharge in section 523(a)(4) "encompasses only a subset of fiduciary obligations," *Berman*, 629 F.3d at 768 (internal quotation omitted), and not all persons treated as fiduciaries under state law are fiduciaries for purposes of that section, *id.* at 767. In this circuit, a fiduciary relationship under section 523(a)(4) arises in only two situations: (1) when there is an express trust, or (2) when there is an implied fiduciary relationship. *Id.* at 768-70; *see also Hulbert v. Cheeks (In re Cheeks)*, 467 B.R. 136, 145 (Bankr. N.D. Ill. 2012).

Schaul concedes there was no express trust here. She argues instead that the required fiduciary relationship was implied. For there to be an implied fiduciary relationship, the creditor's relationship with the debtor must have had two characteristics. First, it must have involved trust attributes arising from a statute, the common law, or an agreement. *Berman*, 629 F.3d at 769-71. Second, it must have been one of "special confidence" between the creditor and debtor. *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994). A special confidence exists when the parties have an unequal relationship pre-existing the wrong, a relationship in which there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Id.*; *see also Berman*, 629 F.3d at 769-71.

Schaul pleads no facts from which either characteristic may be inferred. As far as the complaint alleges, Crawford and Ludwig divorced in 1980 and never dealt with each other again. Since Crawford did not see fit to sell the property, he appears simply to have paid the mortgage and lived there until he died. Schaul identifies no attribute of this relationship arising from a statute, the common law, or any agreement that could conceivably be deemed a "trust" attribute. *Berman*, 629 F.3d at 769. Certainly, the PSA did not make Ludwig Crawford's fiduciary with respect to the property since the PSA gave Crawford complete control over it. Nor does Schaul allege any facts suggesting that the relationship was unequal, so that Ludwig had a "position of ascendancy" over Crawford with respect to the property. *Marchiando*, 13 F.3d at 1116. Again, the PSA gave Crawford, not Ludwig, control of the property.[2/]

In opposing dismissal, Schaul makes no attempt to squeeze the necessary fiduciary characteristics out of the Crawford-Ludwig relationship. She ignores Crawford and notes instead that his sole heir is his disabled son, contending there was an unequal relationship between Ludwig and the son. "There cannot be a more justifiable situation to [find] a fiduciary relationship," Schaul declares. But even assuming the son is also Ludwig's son (the complaint does not say), he is not the plaintiff here. Schaul is the plaintiff, as administrator of Crawford's estate. Any fiduciary relationship had to exist between Ludwig and Crawford. The complaint fails to allege one.

Although Count II itself only attempts to plead defalcation by a fiduciary, Schaul argues that she has at least alleged embezzlement. She has not. Embezzlement for purposes of section

---

[2/]    In fact, a fiduciary relationship between Ludwig and Crawford would have been impossible. For purposes of section 523(a)(4)(A), the fiduciary relationship must have existed "at the time the debt was created." *Berman*, 629 F.3d at 766. The debt alleged here was not created until Ludwig sold the property, and she did not sell it until after Crawford had died.

523(a)(4) is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (internal quotation omitted). The monies that Schaul accuses Ludwig of embezzling were proceeds from the sale of property of which Ludwig was the sole owner. The proceeds were therefore her property, not property of Crawford's probate estate. True, Ludwig may have had an obligation under the PSA to pay most of those proceeds to Crawford's estate, and she may have breached the PSA by not paying them. But keeping money contractually due another is a breach of contract, not embezzlement. *Reshetar Sys. v. Thompson (In re Thompson)*, 686 F.3d 940, 947 (8th Cir. 2012). Count II states no embezzlement claim.[3/]

Because the complaint fails to allege defalcation by a fiduciary, embezzlement, or larceny, Count II fails to state a claim under section 523(a)(4). Count II will be dismissed.

### d. Count III – Section 523(a)(6)

Count III, finally, will be dismissed, as well. Count III fails to state a claim against Ludwig under section 523(a)(6) for a willful and malicious injury to property of Crawford's probate estate.

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To state a claim under section 523(a)(6), a complaint must allege three elements: (1) the debtor owes a

---

[3/]    Although Ludwig has not argued the point, it may be worth noting that Count II also states no larceny claim. To state a claim based on "larceny" under section 523(a)(4), a creditor must allege that "the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir. 1991). Just as Count II fails to allege embezzlement, Count II fails to allege larceny, again because the sale proceeds were Ludwig's property, whatever her contractual obligations were under the PSA.

debt resulting from an injury he caused to another entity or that entity's property; (2) his actions were willful; and (3) his actions were malicious. *Oakland Ridge Homeowners Ass'n v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011). Count III in Schaul's complaint here appears to be an attempt to state a section 523(a)(6) claim based on conversion – and indeed a willful and malicious conversion of property will support a nondischargeability claim under section 523(a)(6). *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 424 (7th Cir. 1985).

To do so, however, the claim must satisfy applicable state conversion law. *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 427 (B.A.P. 9th Cir. 2002) (noting that "[a]lthough federal law determines the dischargeability of a debt, state law governs the elements of a conversion respecting property"). Under Illinois law, the elements of conversion are "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (internal citation omitted); *see also Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005).

Count III fails to allege a section 523(a)(6) claim based on conversion for essentially the same reason that Count II fails to allege embezzlement or larceny under section 523(a)(4). On Crawford's death, it bears repeating, title to the Highland Park property passed to Ludwig as the surviving joint tenant. *Harms*, 105 Ill. 2d at 224, 473 N.E.2d at 934. Because at that point she was sole owner of the property, she had the right to sell it, and the proceeds of the sale were hers, not the probate estate's. In keeping all of the proceeds rather than paying the balance of them to

Crawford's estate, she may have breached the PSA. But a breach of that contract was not a conversion of the monies the contract obligated her to pay. *See In re Thebus*, 108 Ill. 2d 255, 260, 483 N.E.2d 1258, 1260 (1985) ("[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money."). A breach of contract will not support a section 523(a)(6) claim in any event. *Braverman*, 463 B.R. at 119.

Because Count III fails to state a section 523(a)(6) claim based on Ludwig's supposed conversion of the balance of the sale proceeds, Count III will be dismissed.

### e. Leave to Amend

Although Schaul's complaint fails to state any sort of claim under sections 523(a)(2)(A), (a)(4), or (a)(6), and although it is difficult to see what Schaul could allege that might allow an amended complaint to survive a motion to dismiss, she will be given leave to amend. A plaintiff whose complaint is dismissed should usually be given an opportunity to amend – unless, of course, it is clear the opportunity would be futile. *Bogie*, 705 F.3d at 608. But that kind of clarity is rare, and so "[a] wise judicial practice (and one that is commonly followed)" is "to allow at least one amendment regardless of how unpromising the initial pleading appears . . . ." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 13257 at 742 (3d ed. 2004). Despite her unpromising initial complaint, then, Schaul can take another crack at stating a claim. That crack, though, will be her last. If the amended complaint is dismissed, the dismissal will be with prejudice. *See Jahelka*, 442 B.R. at 674-75 (noting that a plaintiff is not entitled to unlimited chances to state a claim).

## 4. Conclusion

For these reasons, the motion of defendant Kimberly Gail Ludwig to dismiss the adversary complaint of plaintiff Nancy Schaul as administrator for the estate of Gary Crawford for failure to state claim is granted. The complaint is dismissed with leave to amend. A separate scheduling order will be entered.

Dated: April 2, 2014

                                                A. Benjamin Goldgar
                                                United States Bankruptcy Judge