UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| KIMBERLY GAIL LUDWIG, | ) | No. 13 B 32960 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NANCY SCHAUL, as Administrator for the Estate of Gary Crawford, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 A 1345 |
| | ) | |
| KIMBERLY GAIL LUDWIG, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

**MEMORANDUM OPINION**

Before the court for ruling is the motion of defendant Kimberly Gail Ludwig under Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), to dismiss for failure to state a claim the second amended complaint of plaintiff Nancy Schaul, as administrator of the probate estate of Gary Crawford. For the reasons that follow, the motion will be granted. The second amended complaint will be dismissed with prejudice.

**1. Jurisdiction**

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## 2. Facts

On a Rule 12(b)(6) motion to dismiss, all well-pleaded factual allegations in the complaint are taken as true, and all reasonable inferences from the facts are drawn in favor of the non-movant. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 612 (7th Cir. 2014). Facts evident from exhibits to the complaint are considered, as are matters subject to judicial notice. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

The second amended complaint, its exhibits, and the court's docket disclose the following facts.

### a. The Property, the Sale, and the Probate Case

Gary Crawford and Kimberly Gail Ludwig married in 1973. (Sec. Am. Compl. ¶ 13). They owned residential property in Highland Park, Illinois, that they held in joint tenancy (the "Highland Park property"). (*Id.*).

In 1980, Crawford and Ludwig divorced. (*Id.*). The judgment in their divorce case included a stipulation and property settlement agreement (the "PSA"). (*Id.*). The PSA provided that the Highland Park property would "remain in joint tenancy between the parties." (*Id.* Ex. B, PSA at § A). Crawford, however, was given the right to exclusive occupancy of the property and the sole responsibility for paying the mortgage debt. (*Id.*). The PSA also gave Crawford the right to contract for the sale of the property and specified the disposition of proceeds should there be a sale. (*Id.*). Specifically, in the event of a sale "by the husband," the PSA entitled Ludwig to "the first $10,000 of proceeds" and said that this "equity entitlement" would "stand as a lien" on the property. (*Id.*). The balance of the sale proceeds above $10,000 would go to Crawford. (*Id.*).

Crawford died sometime in 2010. (*See id.* Ex. D, pt. I). At the time of his death,

Crawford had not contracted for the sale of the Highland Park property. *(See id.)*. That same year, a probate estate was opened for Crawford *(see id.)*, and Schaul was appointed administrator of the estate *(see id.* ¶ 5).

Schaul alleges on information and belief that Ludwig was "made aware" of the opening of Crawford's probate estate. *(Id.* ¶ 28). Not only was she aware a probate estate had been opened, but she also knew the Highland Park property belonged to the probate estate and so she could not sell the property and keep all the sales proceeds. *(Id.* ¶¶ 29-30). Ludwig knew this, Schaul alleges, because the PSA evinces an intent to sever the joint tenancy (and thus to destroy Ludwig's right of survivorship) by giving Crawford exclusive possession of the property and limiting to $10,000 Ludwig's share of any sale proceeds. *(See id.* ¶¶ 14, 18-20, 31, 35). According to Schaul, the intent to sever is also evident from Ludwig and Crawford's "course of dealing" with the property after the divorce. *(Id.* ¶¶ 25, 31). By "course of dealing," Schaul means that Crawford, not Ludwig, lived in the house and paid the bills. *(Id.* ¶ 26).

In March 2012, more than a year after Crawford's death, Ludwig sold the Highland Park property to DRH Cambridge Homes, Inc., giving DRH a warranty deed. *(See id.* Ex. C). Ludwig set the price below the property's fair market value to facilitate a quick sale. *(See id.* ¶ 34). Ludwig did not tell DRH or the title company that under the PSA her rights in the property were limited to a $10,000 "equity entitlement." *(Id.* ¶ 33). Nor did Ludwig notify Schaul or the probate court of the sale. *(Id.* ¶ 32).

Within a month of receiving the $213,262 in net sales proceeds, Ludwig spent more than half, making thirteen transfers ranging from $2,000 to $20,000. *(Id.* ¶¶ 41, 43). Ludwig used the money to pay, among other things, her credit card balances and federal taxes, as well as to fund her IRA. *(Id.* ¶ 43). Schaul alleges this was an unusual spending pattern for Ludwig: in the

three months before Ludwig received the sale proceeds, she had made no payment greater than $1,001 except for her mortgage payment. (*Id.* ¶ 42).

In September 2012, six months after the sale, Schaul filed a petition in the probate court seeking the issuance of a citation to recover assets under section 16-1 of the Illinois Probate Act of 1975, 755 ILCS 5/16-1 (2012). (*Id.* ¶ 7; *see id.* Ex. D, pt. I). The petition sought to recover from Ludwig "all of the net proceeds of the sale" of the Highland Park property "less the sum of $10,000." (*Id.* Ex. D, pt. I). Schaul eventually moved for summary judgment on the petition, and on July 16, 2013, the probate court granted the motion, entering judgment in favor of Schaul and against Ludwig and granting the citation to recover assets. (*Id.* ¶ 8; Ex. A) (the "probate judgment").

The probate judgment required Ludwig to "fully account for all sale proceeds" from the Highland Park property and "turn over said funds" to Schaul as administrator no later than August 19, 2013. (*Id.*). By then, however, Ludwig had spent all of the proceeds. (*Id.* ¶ 44). Implicit in the probate judgment, Schaul alleges, was the finding that the Highland Park property and the sale proceeds belonged to Crawford's probate estate, and Ludwig had no interest in them as a surviving joint tenant. (*Id.* ¶ 9). Also implicit, Schaul says, was a finding that Ludwig had "concealed, converted or embezzled or had in her possession or control" property belonging to the probate estate. (*Id.*).

Ludwig did not appeal the probate judgment. (*Id.* ¶ 10). Instead, on the day she was directed to account for and turn over the proceeds, Ludwig filed a chapter 7 bankruptcy case. (Bankr. Dkt. No. 1).

-4-

### b. The Adversary Proceeding

#### i. The Original Complaint

Schaul then commenced an adversary proceeding against Ludwig in the bankruptcy case, filing a three-count adversary complaint alleging that Ludwig owed Crawford's probate estate a nondischargeable debt arising from the sale of the Highland Park property. Count I alleged the debt was one for money obtained by false representation, false pretenses, or actual fraud, nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). Count II alleged the debt was the result of fraud or defalcation while acting in a fiduciary capacity, nondischargeable under section 523(a)(4), 11 U.S.C. § 523(a)(4). Count III alleged the debt was the result of a willful and malicious injury, nondischargeable under section 523(a)(6), 11 U.S.C. § 523(a)(6).

Ludwig moved to dismiss the complaint for failure to state a claim, and the motion was granted. *See Schaul ex rel. Estate of Crawford v. Ludwig (In re Ludwig)*, 508 B.R. 48 (Bankr. N.D. Ill. 2014). In dismissing the complaint, the court concluded that Schaul had alleged no section 523(a)(2)(A) claim because there was no fraud: under Illinois law, the property was Ludwig's to sell as the surviving joint tenant. *Id.* at 53-55. Schaul had alleged no section 523(a)(4) claim because no facts suggested that Ludwig was Crawford's fiduciary. *Id.* at 55-56. And Schaul had alleged no section 523(a)(6) claim because she had alleged no conversion of the property; again, the property was hers to sell. *Id.* at 56-57. Schaul was given leave to amend.

#### ii. The Amended Complaint

Schaul's amended complaint asserted new theories of nondischargeability supported with new allegations about the probate proceedings and judgment. Schaul took a different tack with

her section 523(a)(4) claim. She dropped the claim based on fiduciary fraud, alleging instead in Counts I and II that Ludwig owed a debt based on either larceny or embezzlement. Count III continued to allege that Ludwig's debt was nondischargeable under section 523(a)(6) as the result of a willful and malicious injury to the probate estate's interests in the property. Count IV was entirely new. In it, Schaul alleged that the probate judgment was a debt to a former spouse under the PSA and so was nondischargeable under section 523(a)(15).

Ludwig moved to dismiss all four counts for failure to state a claim. This motion, too, was granted. (*See* Adv. Dkt. No. 32).

- Counts I and II failed to state claims under section 523(a)(4), although they came closer. Both larceny and embezzlement require a plaintiff to show he owned the property wrongfully taken. Schaul's new allegations indicated that the probate court had conclusively determined ownership of the Highland Park property in Schaul's favor. If so, the probate judgment was arguably issue-preclusive and barred Ludwig from contending the property was hers. But because Schaul had not alleged that the probate court had also conclusively found Ludwig possessed the requisite fraudulent intent when she sold the property, and because no other facts had been pled raising a plausible inference of intent, Schaul still had not stated a claim under section 523(a)(4). Counts I and II were dismissed with leave to amend.

- Count III was also dismissed. The premise of Schaul's section 523(a)(6) claim was that Ludwig had taken something belonging to the probate estate and so had committed either embezzlement or larceny. But embezzlement and larceny are the subject of section 523(a)(4); section 523(a)(6) does not cover those wrongs. Schaul therefore had a claim based on embezzlement and larceny under section 523(a)(4) or not at all. Because it was clear no amendment could save Count III, that count was dismissed with prejudice.

- The section 523(a)(15) claim in Count IV was dismissed as well. Section 523(a)(15) governs debts to a spouse, former spouse, or child of the debtor incurred in the course of a divorce or in connection with a divorce decree. 11 U.S.C. § 523(a)(15). The debt that Schaul alleged was incurred after Crawford's death, not in the course of the divorce (which happened years earlier) or in connection with a divorce decree. The debt was also allegedly owed to the probate estate, not to Crawford, her former spouse. Like Count III, Count IV was insufficient as a matter of law, could not be saved, and so was dismissed with prejudice.

### iii. The Second Amended Complaint

Schaul has now filed a second amended complaint consisting of a single count. In it, she alleges that Ludwig's debt is nondischargeable under section 523(a)(4) as a debt resulting from larceny.[1] Once again, Ludwig has moved to dismiss for failure to state a claim.

### 3. Discussion

Ludwig's motion to dismiss will be granted. Schaul still has not stated a claim under section 523(a)(4). The second amended complaint will therefore be dismissed – and since Schaul has now tried three times to state a claim without success, the dismissal will be with prejudice.

### a. Rule 12(b)(6) Standards

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear

---

[1] Paragraph 3 of the second amended complaint incorrectly describes the adversary proceeding as one to determine the dischargeability of a debt pursuant to "11 U.S.C. §§ 523(a)(4), 523(a)(6), [and] 523(a)(15)." Presumably that description is left over from the amended complaint.

-7-

two hurdles. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must describe the claim in detail sufficient to give the defendant notice of the allegations. *Id.*; *see* Fed. R. Civ. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008). "[A] formulaic recitation of the elements of a cause of action will not do," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Some facts must support each element of the claim. *Id.* at 678-79; *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011).

Second, the complaint "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby*, ___ U.S. ___, ___, 135 S. Ct. 346, 347 (2014). Plausibility does not mean "probability," *Twombly*, 550 U.S. at 556, but it does mean the allegations must raise the plaintiff's right to relief above a "speculative level," *id.* at 555. There must be "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679; *see also Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013). The allegations must actually "possess enough heft" to show the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 557; *see also Engel*, 710 F.3d at 709; *McCauley*, 671 F.3d at 617.

To meet the plausibility requirement, it is not enough to plead facts "'merely consistent with' [the] defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Facts merely consistent with liability "'stop[ ] short of the line between possibility and plausibility of entitlement to relief.'" *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (quoting *Twombly*, 550 U.S. at 557). Similarly, if the allegations "give rise to an 'obvious alternative explanation'" for the defendant's conduct, one that points to non-liability, the claim will not be plausible. *McCauley*, 671 F.3d at 616 (quoting *Twombly*, 550 U.S. at 567). So when

the facts "are 'not only compatible with, but indeed [are] more likely explained by, lawful' conduct," the complaint fails to state a claim. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 612 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 680).[2] In deciding whether a claim is plausible, the court must "'draw on its judicial experience and common sense.'" *McCauley*, 671 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 679).

These pleading requirements apply equally to mental state when that is an element of a claim. *Iqbal*, 556 U.S. at 686-87. Although intent may be alleged generally, *see* Fed. R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009), the plaintiff must still include facts sufficient to raise a reasonable inference of the intent, *Iqbal*, 556 U.S. at 686-87; *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). "A reasonable inference of intent 'is one that is plausible and that flows logically from the facts alleged.'" *Simonian v. Pfizer Inc.*, No. 10 C 1193, 2011 WL 780836, at *1 (N.D. Ill. Feb. 22, 2011) (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009)).

---

[2] There is some tension on this point in the Seventh Circuit's decisions. In *Alexander v. United States*, 721 F.3d 418 (7th Cir. 2013), for example, the court declared it inappropriate under *Twombly* "'to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.'" *Id.* at 422 (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010)); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 257 (Supp. 2014) (noting the inconsistencies in the case law and stating that "the mere existence of an alternative explanation does not entitle a defendant to dismissal *necessarily*" (emphasis added)). The analysis in *Cohen* and *McCauley* is more consistent with *Iqbal* and *Twombly*. In *Twombly*, the Court found the plaintiffs' Sherman Act claim implausible in part because there was "an obvious alternative explanation" for the defendants' behavior, a "natural" one suggesting something other than a conspiracy. *Twombly*, 550 U.S. at 567. In *Iqbal*, similarly, the Court deemed the complaint insufficient "given more likely explanations" for the defendants' conduct, *Iqbal*, 556 U.S. at 681, than "purposeful, invidious discrimination" *id.* at 682. In *Twombly* and again in *Iqbal*, the Court determined plausibility by "stacking up inferences side by side."

### b. The Section 523(a)(4) Larceny Claim

The second amended complaint fails to state a larceny claim under section 523(a)(4). Fraudulent intent is a critical element of that claim, and Schaul has again pled no facts raising a plausible inference that in selling the Highland Park Property Ludwig had any fraudulent intent.

Section 523(a)(4) of the Code excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Larceny for purposes of section 523(a)(4) means "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *American Honda Fin. Corp. v. Ippolito (In re Ippolito)*, Nos. 12-70632-ast, 12-8403-ast, 2013 WL 828316, at *7 (Bankr. E.D.N.Y. Mar. 6, 2013) (internal quotation omitted). To state a claim based on "larceny," a creditor must allege that "the debtor has wrongfully and with fraudulent intent taken property from its owner." *Kay v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991).

The fraudulent intent necessary for a larceny claim is a "felonious intent" intent to deprive the owner of his property. *FDIC v. Barrick (In re Barrick)*, 518 B.R. 453, 461-62 (Bankr. N.D. Ill. 2014); *Iwaszczenko v. Neale (In re Neale)*, 440 B.R. 510, 520 (Bankr. W.D. Wis. 2010). "Intent may properly be inferred from the totality of the circumstances and the conduct of the person accused," *Rose*, 934 F.2d at 904, but the necessary intent must be present at the time the property was taken, *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 703 (Bankr. N.D. Ill. 2002); *Ippolito*, 2013 WL 828316, at *7; *Chiromo v. Grigoletti (In re Grigoletti)*, Nos. 10-5575-AJM-7, 10-50516, 2010 WL 5055927, at *2 (Bankr. S.D. Ind. Dec. 6, 2010).

Because fraudulent intent is crucial to the claim, a person does not commit larceny when he acts without it. So, for example, there is no larceny when someone takes property under the

reasonable but mistaken belief he had a right to take it. *See, e.g., Board of Admin. v. Teixeira* (*In re Teixeira*), No. 13-46629 CN, 2015 WL 59910, at *2 (Bankr. N.D. Cal. Jan. 2, 2015) (finding no larceny where a debtor wrongly kept pension payments after her father's death because she thought what her father had told her entitled her to the payments); *Barrick*, 518 B.R. at 462 (finding no fraudulent intent where the creditor failed to contradict the debtor's testimony that he used loan proceeds in certain ways because he thought that was what the loan was for); *Davis v. Kindrick* (*In re Kindrick*), 213 B.R. 504, 509 (Bankr. N.D. Ohio 1997) (finding no fraudulent intent because at the time the debtor took certain sales proceeds, he "simply thought he was entitled to [them]" based on his understanding of an agreement).

The second amended complaint here does not plead facts making it plausible that Ludwig intended to deprive the probate estate of the Highland Park property when she sold the property and spent the proceeds. Schaul contends that Ludwig's intent is evident from what Schaul describes as "the circumstances of the sale": (1) the speed with which Ludwig sold the property, (2) the low sale price, (3) her failure to notify Schaul or the probate court of the sale, (4) her failure to tell the buyer or the title company she was only entitled to $10,000 of the proceeds, and (5) her use of the proceeds to pay bills and fund her IRA, making payments larger than she usually made and spending half the proceeds in just a month. Ludwig moved quickly, Schaul asserts, to prevent the sale of the property through the probate court. As Schaul would have it, these circumstances add up to a "fraudulent scheme." (Sec. Am. Compl. at 6).

The difficulty with Schaul's contention is that the facts she has alleged are just as consistent, indeed more consistent, with an entirely innocent intent. Whatever the probate court found, Ludwig could reasonably have believed that under the PSA she was entitled to the property on Crawford's death and so could keep all the proceeds from a sale – as indeed this

court found in granting Ludwig's motion to dismiss the initial complaint, *see Ludwig*, 508 B.R. at 54. If so, and since Ludwig evidently had somewhere to live, it would have made perfect sense for her to liquidate the asset quickly, getting whatever she could for it, and use the money to pay bills and contribute to her IRA. Since she could reasonably have believed the property was hers, she would also have had no reason to notify either Schaul or the probate court of her decision to sell the property. And since Ludwig was entitled to all of the proceeds from the sale, it would have meant nothing that she did not tell either the buyer or the title company that she ought to receive only $10,000. The statement would have been incorrect (and of no interest to the buyer in any event).

Just as the circumstances of the sale fail to suggest intent, the chronology of events here raises no inference that Ludwig acted with an intent to deprive the probate estate of the property. The sale that is the subject of the dispute took place in March 2012. Schaul did not petition the probate court to issue a citation to recover issued until September 2012, six months later. And the probate court did not enter its judgment requiring Ludwig to account for and turn over the sale proceeds until July 2013, ten months after that and more than a year after the sale itself. Although Schaul alleges (though only on information and belief) that Ludwig was "made aware" of the probate case when the estate was opened in 2010 (Sec. Am. Compl. ¶ 28), she never alleges – even as a conclusion – that at the time of the sale in early 2012 Ludwig knew Schaul or anyone else was contending the Highland Park property belonged to the probate estate.[3]

Schaul's allegations, then, "give rise to an 'obvious alternative explanation,'" one

---

[3] In the context of the second amended complaint, Schaul's allegation that Ludwig "fully participated in the probate proceedings" (Sec. Am. Compl. ¶ 12) means the proceedings on the citation to recover assets, not the probate case as a whole. (*See* P. Resp. at 6).

suggesting Ludwig's innocence. *McCauley*, 671 F.3d at 616 (quoting *Twombly*, 550 U.S. at 567). Because the facts are "not only compatible with, but indeed [are] more likely explained by, lawful . . . behavior," they fail to make out a plausible claim of wrongful intent. *Iqbal*, 556 U.S. at 680; *Cohen*, 735 F.3d at 612.

Schaul, though, resists the initial premise (that Ludwig could have believed she owned the property), asserting that Ludwig sought to unload the property and spend the proceeds quickly because she knew she would only receive $10,000 if the property were sold in the probate proceeding. (Sec. Am. Compl. ¶¶ 34, 36). According to Schaul, Ludwig had to know this because it was her intent and Crawford's when they entered into the PSA to sever the joint tenancy and limit Ludwig to $10,000. That intent, Schaul alleges, is "clearly" demonstrated by the terms of the PSA itself and the parties' course of conduct. (*See id.* ¶¶ 14, 18-20, 23, 25).

As this court has already found, however, the plain language of the PSA itself contradicts Schaul's assertions. *Ludwig*, 508 B.R. at 54. The PSA specifically provided that the Highland Park property "shall remain in joint tenancy between the parties thereto." (Sec. Am. Compl. Ex. B, PSA at § A). Ludwig's entitlement to the $10,000 mattered only if Crawford exercised his "right to contract for the sale of said home whenever he shall so desire." (*Id.*). When he died without exercising that right, Ludwig could reasonably have thought the paragraph granting Crawford a right of sale and allotting her $10,000 from any sale proceeds was no longer relevant. She could fairly have believed (and in this court's view would have been right to believe) that since the property "remain[ed] in joint tenancy," a concept familiar even to non-lawyers, the property "was hers to sell," *Ludwig*, 508 B.R. at 54. Schaul alleges no facts plausibly suggesting that the parties' "conduct and course of dealing" manifested an agreement to "sever [the] joint tenancy." (Sec. Am. Compl. ¶ 23).

More important, though, the determination of intent does not depend on principles of contract interpretation. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 359 (Bankr. N.D. Ill. 2004). So it matters little whether the parties' conduct or a legally correct reading of the PSA means that, technically speaking, the joint tenancy was severed. Severed or not, what matters is that Ludwig could *reasonably have believed* the PSA gave her ownership of the property as the surviving joint tenant, and so she could reasonably have believed she was entitled to sell it on her own terms and use the proceeds as she liked.

Again, that is not only a plausible explanation of her actions, it is the more plausible one. *See Iqbal*, 556 U.S. at 680; *Cohen*, 735 F.3d at 612. Schaul's explanation – that Ludwig sold the property and spent the proceeds intending to deprive the probate estate of them – is not plausible because it rests entirely on arid legal conclusions, not facts. *See Iqbal*, 556 U.S. at 679 (stating that in ruling on motions to dismiss, allegations that "are no more than conclusions" should be disregarded). Schaul offers no facts at all suggesting that Ludwig sold the property knowing it did not belong to her and knowing she had no right to sell it.[4]

Because the second amended complaint affords no basis for believing that Schaul could ever prove Ludwig acted with fraudulent intent, Schaul has not stated a plausible larceny claim

---

[4] Schaul does not allege that the probate court made any express findings about Ludwig's intent when the probate judgment was entered. The judgment itself, attached to the second amended complaint as an exhibit, contains no findings. Schaul argues that the probate court "implicitly found that Ludwig had 'concealed, converted or embezzled' or had in her 'possession or control' property belonging to the Decedent or his estate." (P. Resp. at 5). The problem for Schaul, a problem noted in the order dismissing the previous complaint (*see* Adv. Dkt. No. 32 at 9 n.4), is that the court could have made either of those findings (since the Probate Act permits a citation to be issued on either ground, *see* 755 ILCS 5/16-1(a) (2012)), only one ground involves an illicit intent (since there is nothing fraudulent about merely possessing property of a probate estate), and it is unclear which finding, if any, the probate court made. The probate judgment declares only that the motion for summary judgment and citation "are granted." (Sec. Am. Compl. Ex. A).

under section 523(a)(4). The second amended complaint will be dismissed.

And this time the dismissal will be with prejudice. Since the original complaint was filed well over a year ago, Schaul has had three chances to state a plausible section 523(a) claim. Repeatedly, she has added and deleted allegations, changing her claims in an effort to formulate a section 523(a) theory. It is now apparent she has none. "Writing a complaint that withstands a motion to dismiss – if such a complaint is possible – should be simple." *Wachovia Sec., LLC v. Jahelka, (In re Jahelka)*, 442 B.R. 663, 674-75 (Bankr. N.D. Ill. 2010). A plaintiff is not entitled to unlimited chances to write one. *Id.* At some point, amendments must end and the defendant allowed to go on his way. *See U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1109 (7th Cir. 2014) (holding dismissal with prejudice was proper where plaintiff had received several opportunities to amend). That point has been reached here.

### 4. Conclusion

For these reasons, the motion of defendant Kimberly Gail Ludwig to dismiss the second amended adversary complaint of plaintiff Nancy Schaul, as administrator of the probate estate of Gary Crawford, for failure to state claim is granted. The second amended complaint is dismissed with prejudice. A Rule 7058 judgment will be entered consistent with this opinion.

Dated: April 2, 2015

_____
A. Benjamin Goldgar
United States Bankruptcy Judge